Filed 10/6/21  Price-Simms v. Gallegos CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PRICE-SIMMS, LLC, et al.,<br><br>     Plaintiffs and Respondents,<br><br>v.<br><br>CHANTAL GALLEGOS,<br><br>     Defendant and Appellant;<br><br>CHRISTOPHER J. FRY<br><br>     Objector and Appellant. | A160893<br><br>(Solano County<br>Super. Ct. No. FCS054306) |

The trial court awarded $7,550 in sanctions against defendant Chantal Gallegos and her attorney as a discovery sanction.  On appeal, they argue that the court erred in doing so.  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Gallegos and a co-defendant, Christopher Firle, were employed by respondents (Price-Simms).[1]  Firle was the vice president of finance, and Gallegos was an internal auditor who also performed accounting functions. Price-Simms brought this action, alleging that Firle and Gallegos embezzled

---

[1] We refer to Price-Simms in the singular, although we recognize that respondents are a group of automobile dealerships and their holding companies that include Price-Simms, Inc.; Price Cars SR, LLC; TWC ops, LLC; Marin Luxury Cars, LLC; and Price-Simms Ford, LLC.

more than $1,600,000 from the business. The complaint asserted four causes of action against both Firle and Gallegos: conversion, receiving or concealing stolen property, breach of fiduciary duty, and constructive fraud.

In March 2020, Price-Simms issued two subpoenas to banks where Gallegos maintained accounts, seeking account information dating back to September 2015, when she was hired by Price-Simms. Price-Simms believed Gallegos's mother was jointly named on one account, and it believed Gallegos's husband might be jointly named on other accounts. Accordingly, it served statutorily required consumer notices on the mother and husband. Neither the husband nor the mother objected to the subpoenas.

Gallegos, however, did object, and an exchange of emails between her counsel and counsel for Price-Simms ensued. Gallegos's counsel at first offered to disclose banking records involving "the last [three] months of [Gallegos's] employ with the dealership (after review and redaction if necessary)," but he later asked Price-Simms to "revisit . . . withdrawing the subpoenas." Counsel for Price-Simms declined to withdraw the subpoenas, believing they were "critical to whether . . . Gallegos received other monies without authorization." Gallegos's counsel then sent an email he characterized as a "formal attempt to meet and confer," in which he did not offer to produce any records, but instead emphasized Gallegos's right to privacy and argued that Price-Simms had no "compelling need" for any account information and could "obtain this information from non-confidential sources," such as its own files. Price-Simms continued to insist that it had a legitimate interest in the account information since Gallegos was "a trusted accomplice to . . . Firle," participated in the embezzlement, and engaged in other financial and accounting irregularities.

2

Gallegos's counsel threatened that "a protective order is certainly a possibility." A few days later, he reported that his "client ha[d] become frustrated with this process" and had "instructed [him] to file the motion" for a protective order. He added that it "didn't really appear that we were close on terms for a protective order anyhow." Counsel for Price-Simms replied, "To say we were not close on a protective order when you have not even presented one makes no sense." He expressed his view that Gallegos's "knee-jerk instruction to just file a motion will warrant an award of sanctions."

Gallegos's counsel answered by insisting that meeting and conferring is not required when it "is futile." In reply, counsel Price-Simms stated, "You and your client have unilaterally terminated meet and confer discussions after initially agreeing that you would propose a protective order. It seems quite clear that you are proceeding this way not because of frustration but because . . . Gallegos, who admittedly took tens of [thousands] of dollars of cash from [Price-Simms's] daily deposits, has plenty to hide."

Gallegos brought her motion under Code of Civil Procedure section 2025.420.[2] Notwithstanding the motion, Price-Simms continued to try and resolve the discovery dispute by offering to prepare a proposed protective order, and Gallegos's counsel said he would be "happy to look it over." After the proposed order was sent to him, however, Gallegos's counsel did not respond. Price-Simms filed an opposition to Gallegos's motion and requested a sanctions award of $11,875 for the fees it incurred in doing so.[3]

In an initial tentative ruling, the trial court denied Gallegos's motion and imposed sanctions against Gallegos and her counsel in the amount of

---

[2] All further statutory references are to the Code of Civil Procedure.

[3] The request was made under sections 2023.010, 2023.020, 2023.030, and 2025.420, subdivision (h).

$9,437.50.  It found that Price-Simms had "a compelling interest in the bank records of [Gallegos] during the time she was employed by [Price-Simms]." And it found "that no less intrusive means of discovery exist[ed] to obtain specific and detailed information about transactions possibly involving [Gallegos's] money . . . and . . . bank accounts."  Although it recognized the general principle that people have " 'some limited form of protection for confidential information' " they give their bank, it rejected Gallegos's contention that Price-Simms was engaged in an inappropriate " 'fishing expedition' " and cited authority confirming the relevancy of a defendant's financial information in an embezzlement case.

Gallegos objected to the initial tentative ruling, and a hearing was held. At the hearing, the trial court explained that in considering sanctions against Gallegos and her counsel it focused on "the lack of any meaningful meet and conferring regarding the motion."  It then allowed the parties to submit supplemental briefs on the proposed sanctions award.  After receiving the briefs, it issued a second tentative ruling, confirming its initial tentative ruling but reducing the sanctions award to $7,550.  No party contested the second tentative ruling, and it was adopted as the court's final order. Gallegos appealed.[4]

---

[4] The notice of appeal identified Gallegos's counsel in the caption, but did not otherwise identify him as an appealing party.  Although the "better practice is for [an] attorney" to make it clear if he or she intends to join an appeal from a sanctions order, we construe the notice of appeal here to include Gallegos's attorney because it is "reasonably clear that [Gallegos's counsel] intended to join in the appeal," and Price-Simms was "not misled or prejudiced by the omission."  (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 885, 889.)

## II. DISCUSSION

### A. *The Law Governing Sanctions.*

Trial courts are often required to impose monetary sanctions when parties or attorneys misuse the discovery process or unsuccessfully file or oppose motions for protective orders. Section 2023.030, subdivision (a) states, "If a monetary sanction is authorized by any provision of [the Code of Civil Procedure], the court *shall impose* that sanction unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (Italics added.) Reiterating this standard to the specific context of motions for protective orders, section 2025.420, subdivision (h) states, "The court *shall impose* a monetary sanction . . . against any party, person, or attorney who unsuccessfully makes or opposes a motion for a protective order, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (Italics added.) " '[S]ubstantial justification' . . . mean[s] that a justification is clearly reasonable because it is well-grounded in both law and fact.' " (*Doe v. U.S. Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1434 (*Doe*).)

Courts are also required to impose sanctions against a party or attorney when they fail reasonably and in good faith to confer about a discovery dispute. (§ 2023.020 ["Notwithstanding the outcome of the particular discovery motion, the court shall impose a monetary sanction" against "any party or attorney who fails to confer as required"]; § 2023.010, subd. (i) [failing to meet as required means "[f]ailing to confer in person, by telephone, or by letter with an opposing party or attorney in a reasonable and good faith attempt to resolve informally any dispute concerning discovery"].) The amount of any such sanctions award is to include "the reasonable

expenses, including attorney's fees, incurred by anyone as a result of that conduct." (§ 2023.020.)

Although parties moving for relief normally have the burden of proving the facts necessary for their requested relief, parties opposing a request for sanctions have the burden of proving facts in two situations relevant here. (*Corns v. Miller* (1986) 181 Cal.App.3d 195, 200–201 (*Corns*).)  The first is when they claim the defense of having acted with substantial justification. Accordingly, once a party seeking sanctions offers a sufficient showing of a misuse of the discovery process, the burden shifts to the opponent to show that he or she acted with substantial justification.  (*Doe, supra,* 200 Cal.App.4th at p. 1436.)

The second situation is when sanctions are sought against an attorney. Sanctions cannot be awarded against an attorney simply because "the attorney's actions were in some way improper"; instead, they can be awarded only when the attorney counsels a misuse of the discovery process.  (*Corns, supra,* 181 Cal.App.3d at pp. 200–201.)  Since an attorney's advice is "peculiarly within the knowledge," of the attorney, an attorney opposing a request for sanctions must show that he or she did not counsel discovery abuse.  (*Id.* at p. 201.)  Accordingly, once a party seeking sanctions against an attorney offers sufficient evidence of a misuse of the discovery process, the burden shifts to the attorney to demonstrate that he or she advised against that conduct.  (*Id.* at pp. 200–201.)

A trial court's discretion in imposing discovery sanctions is somewhat constrained because, as we have said, the statutes provide that the court "shall impose" sanctions in many situations.  (See, e.g., §§ 2023.020, 2023.030, subd. (a), 2025.420, subd. (h).)  But within this constraint, the court's discretion is subject to reversal only if its order is "arbitrary,

6

capricious, whimsical, or demonstrates a ' "manifest abuse exceeding the bounds of reason." ' " (*In re Marriage of Chakko* (2004) 115 Cal.App.4th 104, 108.) When the trial court's exercise of discretion relies on factual determinations, we examine the record for substantial evidence to support them. (*Waicis v. Superior Court* (1990) 226 Cal.App.3d 283, 287.)

> ### B. The Trial Court Did Not Err in Sanctioning Gallegos and Her Counsel.

We begin by discussing an issue that Gallegos and her counsel do not raise on appeal. They do not argue that they reasonably and in good faith conferred about the discovery dispute, even though Price-Simms sought sanctions under sections 2023.010 and 2023.020, and even though the trial court specifically said in considering the sanctions request that it was influenced by "the lack of any meaningful meet and conferring regarding the motion." We could affirm the sanctions award on this basis alone. (See *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 ["We are required to uphold [trial court's] ruling if it is correct on any basis"]; *Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP* (2012) 212 Cal.App.4th 1181, 1196 [failure to raise an issue or support it with reasoned argument and citation to the record forfeits claim of error].)

But even if we ignore this forfeiture, we must affirm the sanctions award because Gallegos and her counsel have not sustained their burden of showing that they had substantial justification in bringing the motion for a protective order or that the sanctions award was otherwise unjust. And Gallegos's counsel failed to sustain his separate burden of showing that he advised Gallegos not to file the motion.

Gallegos and her counsel argue that they had substantial justification to file the motion because Price-Simms did not need Gallegos's account information. They maintain that Firle was the primary wrongdoer, and that

7

Gallegos only "helped cover it up." They state, "There was simply no logical connection to Gallegos' personal banking records. She has no connection to any of the Firle conduct alleged. There is no evidence that she was taking [Price-Simms's] money." Gallegos and her counsel further argue that Price-Simms "could [have] simply investigate[d] their own records to find the alleged evidence."

These arguments are unpersuasive, as they ignore the actual allegations in the complaint and miscomprehend long-established law governing discovery. The complaint alleged that Gallegos actively participated in the theft of Price-Simms's money. Indeed, the record suggests that Gallegos does not dispute that she approved unauthorized wire transfers, issued dealership checks to Firle, took dealership cash, used business credit cards for personal purchases, and covered up many irregular activities in her accounting entries. We think it beyond question that the financial records of a person alleged in a suit to have engaged in these activities are discoverable. (See § 2017.010 [discoverable information can be either "itself admissible in evidence or appear[ ] reasonably calculated to lead to the discovery of admissible evidence"].)

True enough, Gallegos may have privacy interests in her banking records, but the trial court correctly weighed these interests against "the seriousness of the invasion, and the availability of alternatives and protective measures." (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 556.) Gallegos cites no authority supporting the notion that a defendant alleged to have aided and abetted an embezzler can prevent all discovery of their financial accounts by simply invoking a right to privacy. Furthermore, Price-Simms tried to mitigate Gallegos's privacy concerns by offering to accept a protective order. (See *Pioneer Electronics (USA), Inc. v. Superior Court* (2007)

8

40 Cal.4th 360, 371 [" '[I]f intrusion is limited and confidential information is carefully shielded from disclosure except to those who have a legitimate need to know, privacy concerns are assuaged' "].)

Gallegos and her counsel rely on *Diepenbrock v. Brown* (2012) 208 Cal.App.4th 743, but this reliance is misplaced. In that case, the Court of Appeal held that a party's discovery objection based on a legal privilege was not sanctionable because the governing law governing the scope of the privilege was unsettled. (*Id.* at p. 745.) The holding does not aid Gallegos and her counsel. Again, while they provide authority to the uncontroversial effect that people generally have privacy interests in their financial records, they provide no authority suggesting that these interests allow a defendant in an embezzlement case to block all discovery of their banking records. Gallegos and her counsel have fallen far short of satisfying their burden of showing that the motion for protective order was brought with substantial justification.

We also reject Gallegos and her counsel's argument that the sanctions award was otherwise unjust. They claim the award was unjust because they participated in the meet-and-confer process in good faith. Gallegos's counsel maintains that Price-Simms was "set on [its] way or the highway. [Gallegos and I] tried. Nevertheless, [Gallegos and I] did not seek sanctions. This, and the mere fact that the Parties had such an extensive dialogue, refutes any contention that the motion was anything but justified." But the record belies such a description of the parties' actual interactions. As we have recounted, the record contains ample evidence that it was Gallegos and her attorney— not Price-Simms—who took unreasonable positions, failed to meaningfully propose compromises, and terminated the meet-and-confer process before possible solutions were explored.

9

The other points Gallegos and her counsel make in arguing that the sanctions award was unjust fare no better. They claim that the award was unjust because the motion for a protective order "was the first discovery motion in the case." But nothing in the statutes "suggests a party is entitled to one free [pass] . . . before a monetary sanction can be imposed. On the contrary, the plain language . . . requires the trial court to impose a monetary sanction even for the first offense." (*Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 294 [discussing sanctions under § 2030.300, subd. (d), in connection with motions to compel discovery].)

Gallegos and her counsel also claim that the "[i]mposition of sanctions, let alone such a massive amount, is simply not morally fair." They argue that the award was unjust because it was issued "during a global pandemic where counsel and [Gallegos] demonstrated substantial financial hardship." They assert that counsel is working on a "quasi-pro bono basis," his firm's revenue has dropped due to the pandemic, and Gallegos "is not affluent by any sense of the word." But they do not explain how these circumstances justified the positions they took or allowed the trial court to deviate from the dictates of the governing statutes. If anything, these circumstances should have motivated Gallegos and her counsel to use more, not less, care in objecting to and attempting to thwart Price-Simms's efforts to obtain discovery. Furthermore, as we discuss in more detail below, the trial court *did* consider the financial hardship of the award, ultimately reducing the award from the $11,875 amount Price-Simms had requested to $7,550, an amount that provided no reimbursement to Price-Simms for the amount of time incurred after it filed its opposition, such as the time it spent preparing for and

participating in the hearings.[5]  In arguing that the sanctions award was unjust, Gallegos and her counsel simply fail to accept responsibility for their imprudence in causing the award and for the costs Price-Simms was required to expend to oppose their ill-conceived motion.

Thus, we affirm the trial court's award of sanctions under sections 2023.030 and 2025.420, subdivision (d), because Gallegos and her counsel failed to sustain their burden of showing that they had substantial justification in bringing the motion for a protective order or that the imposition of the sanction was otherwise unjust.  And we affirm the award against counsel for Gallegos because he failed to sustain his burden of showing that he advised against filing the motion.

### C. The Trial Court Did Not Abuse Its Discretion in Awarding the Sanctions Amount of $7,550.

Gallegos and her counsel also argue that the trial court's award of $7,550 was "exorbitantly high and should be found to be patently unreasonable."  We are again unpersuaded.

In opposing the motion for a protective order, counsel for Price-Simms submitted a declaration stating he spent more than 10 hours, and his partner spent more than 15 hours, working on the opposition.  He asserted that his standard hourly rate was $550 and his partner's standard hourly rate was $425.  Multiplying these hours and rates, he concluded that Price-Simms had "to date incurred $11,875 in attorney time as a result of having to oppose defendant Gallegos'[s] motion, and additional expense will be incurred should counsel have to prepare and appear at a hearing."  Gallegos and her counsel

---

[5] Since Price-Simms did not appeal from the sanctions award, we do not decide whether the trial court erred in awarding Price-Simms less sanctions than it requested.

presented no counter-declaration or evidence to establish that the hours spent or the hourly rate were unreasonable, even though they were allowed to file, and did file, a supplemental brief on the proposed sanctions.

In its initial tentative ruling, the trial court awarded sanctions in the amount of $9,437.50, without explaining why it had rejected Price-Simms's request for an award of $11,875. After hearing Gallegos's objections and receiving the parties' supplemental briefing, the court issued its second tentative ruling, confirming the first tentative ruling, but reducing the amount of the sanctions. It ordered that Gallegos "and her counsel, jointly and severally, shall pay sanctions in the amount of $7,550.00 to [Price-Simms] instead of the $9,437.50 originally imposed."

The trial court explained the reduction: "This revised amount consists of 10 hours of attorney's fees at $425.00 per hour and 6 hours of attorney's fees at $550.00 per hour. Both hourly rates are reasonable under the circumstances as is the time attributable to each attorney. [Gallegos] did not act with substantial justification, and on this record the imposition of monetary sanctions is not unjust." The court subsequently elaborated, "[T]he primary reason for [the reduction] was really kind of equitable in terms of [the representation by Gallegos's counsel] that he's representing [Gallegos] pro bono and the financial difficulties that his firm has experienced in the last six months. [Price-Simms's] attorney's hours as a whole were reasonable, I thought. A lot – I know they didn't cite many cases . . . but a lot of their effort was involved in showing factually why there was a need to discover the information. And then there was a – there was kind of a breakdown in the meet and confer process that should not have occurred, frankly."

12

We perceive no error, much less one that prejudiced Gallegos and her counsel. Trial judges are presumed to be in the best position to determine the value of the services rendered by counsel, and an appellate court will not disturb a judge's decision unless it was clearly wrong. (*Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1418, disapproved of on another ground by *Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1151.) Abuse of discretion occurs when the trial court makes a ruling that is absurd, arbitrary, or beyond "the bounds of reason." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478.) The court's ruling here was neither clearly wrong nor beyond the bounds of reason.

Furthermore, although Gallegos and her counsel objected generally to the amount of the award, they offered no counter evidence that the number of attorney hours, or the amount of the hourly rate, used to compensate counsel for Price-Simms were improper. Once a documented fee claim is presented, the burden shifts to the opposing party to present specific objections to either the hours claimed or the rates charged by counsel. (2 Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 3d ed. 2015) §§ 11.58–11.60, pp. 11-62 to 11-66.) Mere assertions that the claimed fees are unreasonable or excessive are not sufficient; the objections must be supported by evidence. (See *Avikian v. WTC Financial Corp.* (2002) 98 Cal.App.4th 1108, 1119.)

In short, Gallegos and her counsel have not sustained their appellate burden of showing that the amount of the sanctions award was excessive.

DISPOSITION

The order awarding sanctions to Price-Simms in the amount of $7,550 is affirmed. Price-Simms shall recover costs on appeal.

_____

Humes, P.J.


WE CONCUR:


_____

Margulies, J.


_____

Sanchez, J.


*Price-Simms, LLC v. Gallegos*  A160893